Next case, 5-18-0215, Hubebner v. Family Video Movie Club. Are you ready? Can you guys hear me okay if I'm down, I know I'm short. Yes. I'll try to just project my voice. Okay, and there's a mic up there for recording for posterity, so try and speak as best you can so that that catches your voice. May it please the court. Counsel, my name is Brandi Johnson and I represent Family Video Movie Club in the love reference matter. I'm sorry, in this matter. And the case and issue involved a very narrowly defined discovery dispute involving email communications with a private investigator. A private investigator. Position, plaintiff's position in the lower court was that private investigator communications are sterile. So the premise of this position is that a private investigator is a third party and as such no privilege would apply to communications with the private investigator. So the attorney-client privilege and the work products wouldn't extend to those communications. This was the sole point of contention that plaintiff provided prior to the in-camera review regarding his position concerning why the email communications were discoverable. It's the only basis upon which he challenged defendant's claim of privilege and it's the only basis upon which that he, well it's the only point of contention that he raised in his demand that the documents be submitted to the trial court for an in-camera review. Defendant's position on the other hand was that it was possible for the claim privileges to extend to communications with private investigators when those private investigators were necessary representatives of the attorney or the attorney's client. So the issue before the court was really very, very narrow. Whether or not communications with private investigators are always discoverable or whether the claim privileges could be extended to a private investigator's communications. This was the sole issue that was presented before the trial court. It was the sole issue that was considered by the trial court. And it's the sole issue upon which vast arguments and evidence were put forth before the trial court. On appeal, the plaintiff doesn't contest defendant's assertions that necessary representatives are basically treated or are treated the same as an attorney's staff, a paralegal, secretary, or that the private investigators in this case were necessary representatives of FMGR, the attorneys, or Gallagher Bassett, the interim, simultaneously really. The plaintiff also does not offer any arguments on appeal that refutes defendant's position that when a private investigator is a necessary representative, the attorney-client privilege and work product doctrine can extend to communications between the private investigator and the attorney of which is a necessary representative, as well as communications between the attorney, his client, and the private investigator. Instead, the theory that the plaintiff is now pursuing on appeal is new and distinct, specifically, well, correct, before I even get there. Since the plaintiff hasn't offered in his brief any arguments to contest defendant's arguments in their initial brief concerning the necessary representative or the extension of the privilege to be a necessary representative, unless the court has any questions on those issues, I'm going to just defer to my brief and address the issues that the plaintiff did raise in his brief. So on appeal, the plaintiff has argued that in cases involving a corporate defendant where they claim privilege, that the communications involving employees of the corporate defendant are only protected if it's shown that the employee was a member of the control group. The plaintiff also asserts that the defendant had the burden to show that Veronica Duda, in this case the family video human resources manager, was a member of the control group and that the plaintiff's failure to issue or provide evidence or information upon which a determination could be made one way or the other regarding Duda's inclusion in the control group was what resulted in a waiver of the attorney-client privilege or the assertion of the work-requirement doctrine. This is a different and distinct theory from what was raised below. The plaintiff's argument below was that the communications with the private investigator are discoverable full stop. And there is no basis under which they would ever be protected. If the position is deemed correct, the advocacy of this position is what was disputed. And if this position is deemed correct, the only relevant question would be whether or not the communications involved the private investigator. If the communications involved the private investigator, according to the plaintiff's position, they're discoverable. It doesn't matter who else was involved. It doesn't matter whether the attorney that hired the investigator was involved. It doesn't matter if the communications involved the insurer. And it doesn't matter whether they involved a member of the control group. Therefore, Veronica Duda's status as a member of the control group was essentially irrelevant. It wasn't a material consideration. And when disputing the advocacy of the plaintiff's position before the court below, the defendant was not required to address the validity. Well, we weren't required to show that Veronica Duda was a member of the control group to assess the validity of this position. Essentially, it wouldn't matter whether she was or not because according to the plaintiff, the involvement of a private investigator prevents any type of privilege from attacking. So even if there is absolutely every evidence in the record, absolutely undeniable evidence in the record showing she was a member of the control group, the plaintiff's position would be that it still didn't matter that they were discoverable because they involved a private investigator. Therefore, in litigating the dispute before the trial court, the issue is extremely narrow. It's whether or not a private investigator's emails can ever be subject to privilege. There was no need to show whether Veronica Duda was actually a member of the control group. Further, this is sure, our plaintiff never assessed or never contested or brought forth or questioned her Veronica Duda as a member of the control group. Why would he? It was irrelevant. It was his position.  So by now explaining that the emails were discoverable because the defendant didn't show that Veronica Duda was a member of the control group, the plaintiff is switching theories on appeal and for the first time introducing a theory which the defendant was not able to provide evidence of the love. Had the defendant known or had any indication that Veronica Duda's inclusion in the control group would be relevant to the dispute before the trial court, it would have prevented it from receiving evidence. Had they had any indication that he questioned her inclusion in the control group or that he had more than one basis or argument for disputing whether or not the emails were discoverable, then we certainly could have provided the evidence that she was in the control group. She is who could have provided it. We didn't have the opportunity to. And by basically abandoning his original issue and raising the control group for the first time on appeal, the petitioner would be depriving defendants of the opportunity to address his arguments, and offer evidence showing that Veronica Duda wasn't a member of the control group. It's also the defendant's position that the plaintiff waived his right to question Duda's inclusion in the control group when the plaintiff granted defendants the discretion to determine whether various individuals were or were not members of the control group and defendant reasonably relied upon plaintiff's seemingly or apparent acceptance of his determination. Now, how did plaintiff grant defendants this discretion? Well, in the letter of October 5, 2017, where the plaintiff provided a revised summary of the categories of documents he wanted submitted for in-camera review, he states, I am not interested in your communications with the control group of Family Video, but I am interested in your communications with other employees of Family Video concerning this matter, as well as their communications with you, as well as intra-company communications, including those between control group members and non-control group employees. Plaintiff's request required the defendant to determine who was in the control group, who was not in the control group, and then review the documents and communications to determine whether they could be produced because they involved non-control group members. After defendant complied with this request and turned over communications involving non-control group members, nothing ever more came of this. Plaintiff didn't challenge it, he didn't give any indication that he questioned our determinations with regard to Judith's inclusion in the control group, or that he even had his concerns or doubts about Judith's inclusion in the control group. In fact, between October 15, 2017, and when he filed his brief, he never raised this issue, he never contested it, he didn't give any indication that her inclusion in the control group was something that he felt, argued that he doubted, or he did not accept. His actions gave, reasonably, gave defendant the belief that he accepted our determination and would reasonably rely upon that. Further, this is not the first time that defendant has indicated or given the indication that he agrees with our determination that he was in the control group. After the 2016 discovery dispute, the court issued an order stating that we needed to revise some of our discovery responses, answer them without objection but subject to privilege. We did answer some subject to privilege. This would include communications with private or with our family video. And between when we filed those revised responses in 2016 and, I think it was, I think it was actually, not until actually October of 2017 did defendant give any indication that he questioned or had any concerns about communications with family video in general. He didn't, during those 15 months or more, he didn't make any inquiries concerning family video's control group, seek information about the control group members, or ask that we submit any documents for an in-camera review. In fact, in August of 2017, when he first did request an in-camera review, his list of what he wanted submitted didn't include communications with family video. That only came into being during the October 2017 revised list of categories he wanted submitted. And in that revised list, he specifically said it's not enough for us to determine our communications with a control group, leaving it for us to determine who's in the control group and submitting those documents. So it's our position that even if plaintiff is deemed to have forfeited the issue regarding the control group by not raising it above, that he waived it by his actions of submitting us to determine who was in the control group, apparently accepting that determination and only suggesting it on appeal. Plaintiff also, for the first time, on appeal, raises the issue of the claims file. He states that since we didn't turn over all of the email, or we didn't turn over the claims file for an in-camera review, we've waived basically, I guess, the right to assert privilege. The claims file, as described in that brief, was never requested. It was not part of the revised list that was submitted in October 2017. I set forth exactly what was in that letter. The letter is part of the record. The court can review it. But it's our position that this is also a new issue. It's being raised for the first time on appeal, and it's been forfeited. Furthermore, even assuming it wasn't forfeited, plaintiff did not request the claims file for the reasons set forth in the brief. I won't reiterate all of those reasons now, but I will refer to the brief on this issue. So we respectfully request that this court find that plaintiff forfeited his ability to raise control groups as an issue, or at the very least, waived it. And if this court were to find that the issue was not forfeited or waived, then we would respectfully request, given the unique circumstances of this case, that it be remanded back down to the trial court pursuant to your authority under Rule 366 for the sufficient evidence concerning whether Ms. Duda was a member of the control group and the court's ruling on the issue. Thank you. Have a good time in the rebuttal. Thank you. Mr. Martin. Good morning. May it please the court, counsel. My name is Matt Marlin. I'm here on behalf of Plaintiff Appellee Eugene Kuehner. I'd like to start out, I don't want to go through the statement of facts that I put in my brief, but there is one overarching theme in the defendant's argument and in the brief, and that's the fact that somehow I have not raised the control group issue previously. The defendant put that in the brief that no facts, evidence, or arguments concerning this issue were presented to the trial court by a plaintiff's attorney. I don't think that is factually accurate. It's not accurate. I actually brought it up in three different instances, one time in a pleading. The first time was my pleading of March 7, 2016. I'm sorry, my motion of March 14, 2016. I filed that motion, and that was entitled Plaintiff's Motion to Compel Production of Various Documents Listed in Defendant's Privileged Law. And that is found at C-167 through C-173. This is the motion that I filed to strike or at least compel production of various documents in a privileged law that the defendant had produced a week before. And if you take a look at that privileged law, it's attached, to my knowledge, as A-39. It's a one-page document. It's very rather nondescript for as many documents in hindsight as the defendant was claiming to be privileged. But in this pleading, I put specifically in paragraph 4 on page 2, I wrote, quote, The second time that I brought up the control group issue was in my Rule 201-K letter dated October 16, 2015. That's marked as A-20 through A-22 in my brief. In the second page under Interrogatory 17, I wrote, quote, The third instance in which I brought up the control group issue was in my letter dated October 5, 2017. It's marked as A-50 through A-52 in the appendix to my brief, which states as follows, I am not interested in your communication with Control Group at Family Video, but I am interested in your communication with any other employee of Family Video concerning this matter, as well as their communication with you, as well as intra-company communications, including those between Control Group employees and non-Control Group employees, end quote. This issue was raised before the trial court. The defendant does not believe that it has been raised, but it's been raised as a matter of pleading. It's in the criminal record. And the reason I did this is because, obviously, the attorney-client privilege only applies to communication between the attorney and Control Group members of a corporation, as well as the corporation's top-level advisors. And I'll get into that in a minute, what the test is for that. But essentially, the defendant's essentially trying to claim that any communication with any employee of Family Video is a privileged communication under the attorney-client privilege, and that it's simply not what the law is in this state. I do cite the Claxton case. That's a First District case, 1990, that cites the Consolidation Coal versus Bucyrus Erie case, which is an Illinois Supreme Court case from 1982. And the reason that we have this Control Group limitation is that if it weren't in there, this would essentially be an absolute bar to the discovery of relevant material, and it would contravene the broad discovery, which is essential for fair disposition of a lawsuit. And the Claxton case continues. It says, for this reason, courts limit the protection of privilege, especially in a corporate context, where broad privilege would effectively make most relevant material immune from discovery. In other words, there would be no discovery that I could get from a corporation if there were no type of limitation with regard to the Control Group. Now, getting directly into the attorney-client privilege issues, I'd like to point out that defendant's appellate brief omits any mention of the Control Group as an element of the attorney-client privilege for a corporation. Defendant's brief cites the 1982 case that I just cited, the Consolidation Coal versus Bucyrus Erie case, about the purpose of the attorney-client privilege, but the defendant's brief overlooks the discussion about the privilege being limited to the Control Group employees. It is in there. And I think that the Control Group element of the attorney-client privilege for a corporate client, it's problematic for family viewing in this case because it appears that most of the documents and e-mails that are claimed to be protected by the attorney-client privilege included Veronica Duda, a self-described human resource representative at the defendant. And the court, I would ask, keep in mind that not until December 1, 2017, when the defendant tendered their documents for the in-camera inspection, was a detailed privilege log finally prepared. I was the one that initially asked the defendant to prepare a privilege log in my 201-K letter that's attached to my brief in the appendix. The defendant did comply, but that's where we get that one-page, four-paragraph description of the privilege documents. The defendant tendered a lengthy, rather seven pages, it was detailed, privilege log when she tendered the documents to the trial court for the in-camera inspection. Until that point, I knew who Veronica Duda was, but I did not know that there was any communication with her that would claim to be privileged. And that will be significant in just a minute. Now, as far as Veronica Duda, why is she significant? Well, because typically a human resource representative is not part of the control group, nor the second prong here, an advisor to top level of management, such that a decision would not be made without her advice and whose opinion, in fact, forms the basis for any final decision by those with actual authority. So, in other words, the attorney-client privilege does not attach to any communications involving Veronica Duda because she's not part of the control group of the defendant, nor presumably a top advisor to them. Now, why do I say presumably? Because we don't know, as the defendants failed to support the record, with something other than Veronica Duda being a human resource representative. The defendant claims in its reply brief that, had been aware that the control group element was an issue, the defendant would have introduced evidence to address these assertions. And that's on page 7 of the defendant's reply brief. If the control group is an element of the attorney-client privilege, my question is, why didn't the defendant state that in its appellate's brief? There was no mention of control group issue as being an element of the attorney-client privilege in a corporate context. Now, I want to address the issue of why I brought up the control group matters in the trial court, but the defendant's argument actually ignores whose burden it is, and that's very important. The Scheer v. Marshall Field case that I cite in my brief on page 17 states that the party that asserts the privilege has the burden of proving it. The case goes on to state that a mere assertion that a matter is privileged will not suffice. So, what's not in dispute is that the defendant is asserting a number of privileges, and the defendant has a burden to establish them. In the present case, the defendant has failed to provide any information or evidence supporting the defendant's presumed position that Veronica Duda or anyone else constitutes part of the defendant's control group. And here's what we know about Veronica Duda. First, she's referred to as a human resource representative in defendant's supplemental privilege log dated December 1, 2017. That is the detailed, the second privilege log, and that's marked as A-12 in defendant's appendix. Second, and more importantly, Ms. Duda signed an affidavit that was dated June 17, 2015, in which she aversed that she is the, quote, human resource representative for the defendant and that she would not be the appropriate designee for a deposition if and when plaintiff's counsel, me, would request a deposition. This affidavit is found in the Commonwealth Record at C-96. The bottom line is that the defendant has failed to provide any documents or information that supports its claim that Veronica Duda should be deemed part of the defendant's control group, and this is construed against the defendant as it's the defendant's burden of proof to establish it. So therefore, we ask that this court find that neither Veronica Duda nor any of other defendant's employees are part of the control group and that consequently the attorney-client privilege does not apply to any of the documents at issue. Again, I would point out, I have not seen any of these documents. These were submitted in camera to the court. I have a privilege log to try to determine what I think may be and may not be privileged. I have raised in pleadings, specifically both of my motions that were filed in February and March of 2016, that I did not believe a number of the privileges the defendants claimed applied. I have not in any form or fashion limited my inquiry to just investigators. I have challenged the attorney-client privilege and the work product doctrine claims by the defendant, and I think if the court takes a look at the emails, I think that the court will hopefully agree that these emails are in fact not privileged, and the same with the investigators' reports, but I'd like to get into the work product doctrine briefly as well. I assume the disputed discovery is all part of the record? As far as I know. The camera discovery and the judge's rulings on those? Your Honor, as far as I know, yes, with the exception of the Gallagher Bassett claims file that has apparently not been tendered to the trial court. So that never was part of the record? That's correct. That's correct. I am limited in what documents I have access to. Obviously, if there's a claim of privileged documents, I don't have access to them. I have to go on the description, namely the privilege log that the defendant tendered. There was no detailed privilege log until the time of the actual submission, four months after the request was made by me, that the documents be submitted for the in-camera inspection by the trial court. And, Your Honor, just to follow up, I do claim in my brief that the defendant has waived any claim of privilege to the Gallagher Bassett documents by not submitting them to the trial court for the in-camera review. And the truth of the matter is I wasn't aware until I was working my brief that the Gallagher Bassett file had not been tendered to the trial court. So with regard to the attorney-client doctrine, one of the several cases is the Waste Management Opinion by the Illinois Supreme Court from 1991. And it laid out the parameters of a product by dividing it into two categories. The first category is ordinary work product, and the second category is opinion work product. Now, it only differs a lot from other states and significantly from the federal rules of civil procedure. We are much more generous in terms of what is discoverable in work product than the other states and the federal rules. Ordinary work product is defined as relevant material generated in preparation for trial which does not disclose conceptual data. On the other hand, opinion work product consists of material generated in anticipation of litigation which reveals the mental impressions, opinions, or trial strategy of an attorney. Ordinary work product is freely discoverable in Illinois, while opinion work product is not. It's subject to discovery upon a showing of impossibility of securing similar information from other sources. In other words, if the source is dried up and the only source of that information is the other attorney's work product, then you may be able to access that information. But for purposes of this, for sake of my argument, I'm really dealing with ordinary work product. It's discoverable. The defendant would have you believe that any work product is protected and privileged, and that's simply not accurate. In the Consolidation Poll Opinion 1982, I've cited this before, versus Boussard or Seery, the Illness Report determined that an expert's report did not constitute work product because it did not, quote, reflect or disclose the theories, mental impressions, or litigation plans of the defendant's attorneys. And they also said, nor is it the product of the attorney's mental process. Moving on to waiver of the work product privilege, it's waived much the same way as the attorney-client privilege may be, including by distributing the privileged documents to employees outside the control group of a corporation. So, like the attorney-client privilege, work product can be waived as well by disclosing documents to non-control group employees, which I think is pertinent in this case. As the defendant has not met its burden that Veronica Duda is part of the control group of a corporation, I point that out to the Defendant's Counsel in pleadings in 201-K letters. Frankly, it's not my burden. It's the defendant's burden to establish. But regardless, it is an issue, it was an issue, and the defendant has not come forth with any information, at least in the record, that would support the proposition that Veronica Duda should be considered part of the control group or a top advisor to the control group. Final issue about the Gallagher-Bassett Claims File. I originally made the request specifically for the Gallagher-Bassett Claims File August 4, 2017. That's document 847 in my appendix. The defendant complained sometime after, it was roughly three weeks after I made that request. That document, those documents, as well as other documents, be submitted to the trial court for the in-camera review. Defendant complained that too many documents were involved, so I attempted to narrow the items and categories of documents for the in-camera inspection. That was done by a letter dated October 5, 2017. There were some other correspondence in there that's in my brief as well. As it turns out, as I indicated, the Gallagher-Bassett File is not submitted. In the defendant's reply brief, defendant claims that, nowhere in plaintiff's revised list did he include the entire claims file or request that it be tendered for review. The defendant even recites my letter dated October 5, 2017, which is marked as 850 in my appendix, but for some unknown reason omits the first paragraph of that letter, which states, quote, please be advised that I requested that you submit the claims file to the trial court for an in-camera review as items had been claimed as privileged, which in fact were not privileged, and which you then subsequently produced. As you are aware, I have the right, pursuant to the court's order of March 29, 2016, to require you to tender the privileged law, along with the privileged documents, to the court for an in-camera inspection to rule on defendant's claim of privilege. Simply put, I reiterated my request from my email of August 4, 2017, that the claims file be included in the in-camera inspection, and the defendant apparently failed to include it. In conclusion, if the attorney-client privilege applied to any documents, it was weighed by providing them to Veronica Duda, an employee outside the defendant's control group. The same would hold true of any documents or information claimed to be protected by the Attorney Work Product Doctrine. Also, the Attorney Work Product Doctrine is not as overbroad as the defendant suggests, and it's brief. And for these reasons, I ask that the trial court's decision be affirmed. And I would also like to point out, finally, I have no objection to the finding of contempt being vacated by this court, regardless of your decision.  Thank you. Ms. Johnson. Thank you. I guess I am going to go there. All right, with regard to the claims file. Originally, on August 4, 2017, the petitioner did say he wanted the entire claims file. The claims file is almost 2,000 pages, and it obviously includes things that would be subject to privilege, such as the attorney's communication with the adjuster. So we approached the plaintiff's attorney, and we tried to work this out. It resulted in a narrowing. We asked if we could submit. Basically, he said that he wanted to ensure that there was nothing privileged in the claims file. Understandable. So we said we'll submit an itemization of what's in the claims file. We did so. As a part of the itemization, we specifically stated, please advise whether you will withdraw your request for a new camera review. In response, we get the October 2017 letter. Now, the plaintiff's attorney just basically said that we ignored the whole first paragraph. We didn't. The first paragraph was a recitation of the facts leading up to where we were at that point in time. He then says, which is very important, with regard to the categories of documents I desire to be submitted for an in-camera review, and he goes to list the categories. One is the intercompany communications and extracompany communications. The second is any statements we contend are privileged. The third would be communications with and documents from investigators. The fourth is any claims notes concerning the matter prepared by family video. And then materials related to expert witnesses. And he says, once again, please submit any documents that fall into these above-mentioned categories with regard to an in-camera review unless they have already been produced. Now, no more in here does he include the entire claims files. In fact, the whole purpose of writing this list was that we wouldn't have to submit the entire claims file. And if he actually did expect us to submit the entire claims file, there would have been no reason for him to specify claims notes prepared by family video as one of the categories. Any claims note, regardless of who prepared it, would have been included in the entire claims file. Nothing in this letter clearly conveyed that he expected the entire claims file to be submitted. To be the purpose of why we were trying to narrow the issue, narrow the documents to be submitted, I'm sure. Your Honor, please, I would really appreciate me submitting 1,700 pages for you to go through when we've tried to work this out. And to answer Your Honor's question, yes, the e-mails were submitted subject under seal and all part of the record. So that would then address some of the petitioner's claims or plaintiff's claims with regard to the controller. He mentioned two letters where he brought up his arguments concerning the controller. One is October of 2015, I believe is the date he said. The other is March of 2016. Those are before the 2016 order, wherein the court said that we were to revise our answers subject to privilege and if plaintiff still had questions or concerns regarding whether the privileges were properly sought, that he could request an in-camera reveal. For 15 months, he did not. He didn't request an in-camera reveal. He didn't challenge the documents. We are also of the position that that order is limited in time and scope. At the time of the order, none of the private investigator communications were in existence. We hadn't hired the private investigator yet. And as far as the October 2017 letter, while it does mention the control group, what he says is he's not interested in our communications with the control group and he leaves it up to us to determine what communications involve control group members and what communications involve non-control group members. He didn't say turn over any communications for failing video. Now, he questions why we didn't address the control group in our brief, in our original brief. I've already explained to the court that the issue was so narrow, so narrowly tailored, that it wouldn't matter whether or not it was a member of the control group or not. It was irrelevant in the material consideration. The question was whether or not private investigators, or any investigator, whether or not the claim privileges could be extended to private investigators or if Petitioner's report claims right that private investigators with third parties and the inclusion of them automatically presents to the protection of the documents and they are automatically discoverable. And as we all know, a title does not make the man. Veronica Duda's job duties are such that she would be in the control group and the fact that she wasn't going to appear as a corporate designee at that time does not mean that she was unable to or that she wouldn't be the corporate designee and in fact, she has appeared as a corporate designee in the past. Thank you, Your Honor. Thank you. Court will take the issue under advisement.